**Earl R. NUTT, et al., Plaintiffs,**

v.

**GAF CORPORATION and Nicolet, Inc., Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: Jan. 6, 1987.
Decided: Feb. 12, 1987.

Robert Jacobs, and Thomas C. Crumplar, of Jacobs & Crumplar, P.A., Wilmington, for plaintiffs.

J.R. Julian, of J.R. Julian, P.A., Wilmington, for defendant GAF Corp.

Jeffrey M. Austin, of Howard M. Berg & Associates, P.A., Wilmington, for defendant Nicolet, Inc.

TAYLOR, Judge.

I

Defendant Nicolet, Inc., [Nicolet] remains in this case charged with conspiracy to suppress information concerning the dangers of asbestos, which resulted in the plaintiffs being exposed to asbestos without having been adequately warned of those dangers. In addition to denying participation in any conspiracy, Nicolet contends that it cannot be held liable because plaintiffs' injuries were not proximately caused by Nicolet, but rather by the acts of plaintiffs' employer, E.I. duPont de Nemours & Co., Inc., [duPont] in exposing plaintiffs to asbestos when duPont had a high level of knowledge of the dangers of asbestos. The issue is the relevancy of such evidence to Nicolet's defense.

At the outset, it is necessary to put plaintiffs' claim against Nicolet in its proper perspective. Nicolet characterizes the conspiracy claim as merely encompassing suppression of information in medical articles and promotional materials. This misses what I perceive to be the gravamen of the claim. This suppression of information is only one facet of the conspiracy and it is of significance in identifying the members of that conspiracy. Nicolet's argument that the alleged suppression of information did not proximately cause any injury fails because it overlooks the fact that the claim arises from the marketing of the product asbestos which was defective because appropriate warning did not accompany the product. While concealment of the warning standing alone did not cause injury, that concealment when coupled with the marketed asbestos is alleged to have caused injury.

In its earlier decisions, this Court has analyzed plaintiffs' conspiracy claims in this case and has found that they involve a showing that an asbestos company agreed with other asbestos companies to suppress knowledge of the dangers of asbestos, and pursuant to this conspiracy, members of the conspiracy intentionally marketed their asbestos products without effective warnings; and that the plaintiffs were injured by such products of at least one of the conspirators. *Nutt v. A.C. & S. Co.*, Del. Super., 517 A.2d 690, 694 (1986); *see also, In re Asbestos Litigation*, Del.Super., 509 A.2d 1116, 1120 (1986).

This Court has found that an objective of the alleged conspiracy was the intentional marketing of a defective product, namely, a product without an effective warning. *Nutt, supra,* 517 A.2d at 695. Plaintiffs' claim rests on the position that one or more

of the conspirators intentionally marketed their asbestos products without proper and adequate warning labels, knowing that the lack of adequate warning made the product dangerous, and knowing that the product would be used, and that without the adequate warning, it was likely to be used without proper safety precautions. If the actions of one of the conspirators satisfies the elements stated in the previous sentence, each conspirator is liable for the acts done in furtherance of the conspiracy. *Laventhol, Krekstein, Horwath & Horwath v. Tuckman*, Del.Supr., 372 A.2d 168, 170 (1976). Each conspirator will be held to have intended the objective of the conspiracy and the overt acts done by the individual conspirators in pursuance of the conspiracy. *Id.*

Therefore, this consideration proceeds from the premise that plaintiffs will be able to prove the alleged conspiracy and that the marketing conspirator supplied an asbestos product without proper warning which was used in DuPont's plant and that the marketing conspirator's conduct constituted an overt act in perseverance of the conspiracy. In such case, Nicolet's liability status will be equated to that of the marketing conspirator. *Id.*

## II

The ultimate consideration is whether evidence of DuPont's knowledge and information concerning the detrimental effects of exposure to asbestos is admissible to aid Nicolet's contention that DuPont's conduct was the proximate cause or superseding cause of plaintiffs' injuries thereby relieving Nicolet of liability.

## A.

■ At the outset, observations should be made about the subject of causation. Liability of a defendant does not depend upon a showing that defendant's conduct was the exclusive cause of plaintiffs' injuries. There may be more than one proximate cause which would render a party liable for injuries. *McKeon v. Goldstein*, Del.Supr., 164 A.2d 260, 262 (1960); *Wyatt v. Clendaniel*, Del.Supr., 320 A.2d 738 (1974); *Sweetman v. Strescon Industries, Inc.*, Del.Super., 389 A.2d 1319, 1323 (1978).

■ Proximate cause has been defined as "that direct cause without which the accident would not have occurred." *Chudnofsky. v. Edwards*, Del.Supr., 208 A.2d 516, 518 (1965). Proximate cause has been said to exist where there is a causal connection between the tortious conduct and the injuries which is a natural and unbroken sequence without intervening efficient cause. *Biddle v. Haldas Bros.*, Del.Super., 190 A. 588, 596 (1937). It is also described as a cause which "brings about or produces, or helps to bring about or produce the injury and damage, and but for which the injury would not have occurred". *Biddle*, 190 A. at 596.

## B.

■ Even though tortious conduct, when considered alone, may appear to meet the foregoing test, that tortious conduct may not render that tortfeasor liable if a superseding [1] cause has occurred. Two decisions of the Delaware Supreme Court have focused on this subject, *Stucker v. American Stores Corporation*, Del.Supr., 171 A. 230 (1934), and *McKeon v. Goldstein, supra.*

*Stucker,* after reviewing decisions from other states, accepted the principle that a party committing a tortious act would not be relieved of liability by virtue of the intervening act of a third party if the intervening act " 'ought to have been foreseen,' or 'if, according to the usual experience of mankind, the result ought to have been apprehended.' " *Stucker,* 171 A. at 233. The Court amplified this concept through the following rhetorical questions:

[1]. The word "intervening" has sometimes been used to have the same meaning as the word "superseding". Since "intervening" has also been used in situations where the original tortfeasor is not relieved of liability, this decision will use "superseding" whenever the result would relieve the original tortfeasor of liability and "intervening" to refer to conduct subsequent to the original tortfeasor's conduct which does not relieve the original tortfeasor of liability.

Why cannot one be guilty of wrongfully exposing another to a third person's negligence? If so, why should not a defendant, in a case where it is his duty to avoid the negligent exposure of another to danger, be held to responsibility for exposing him to the danger of a third party's reasonably-to-be-anticipated-as-possible negligence?

*Stucker,* 171 A. at 233.

*McKeon,* citing *Stucker,* declared that the test to determine whether a prior tortious act was a superseding cause turned on whether the subsequent negligence "was something which should have been reasonably foreseeable or reasonably anticipated". *McKeon,* 164 A.2d at 262. It will be noted that the Court in *McKeon* also cited, with approval, *Restatement of the Law of Torts,* § 447.[2]

A succession of cases have applied the foreseeability test to determine the superseding cause issue. *Cf. Cooke v. Elk Coach Line,* Del.Super., 180 A. 782 (1935); *Szymanska v. Equitable Life Ins., Co.,* Del.Super., 183 A. 309 (1936); *State v. Clark,* Del.Super., 20 A.2d 127 (1941); *Clemens v. Western Union Telegraph Co.,* Del.Super., 28 A.2d 889 (1942)—above decisions by Layton, C.J.; *Torrack v. Corpamerica,* Del.Super., 144 A.2d 703 (1958)—decision by Christie, J.; *Warburton v. Phoenix Steel Corporation,* Del.Super., 321 A.2d 345 (1974), *aff'd,* Del.Supr., 334 A.2d 225 (1975)—decision by Taylor, J.; *Vadala v. Henkels & McCoy, Inc.,* Del.Super., 397 A.2d 1381 (1979)—decision by Walsh, J.

In *Torrack,* then-Judge (now Chief Justice) Christie cited the more graphic language of 38 *Am Jur* 729, that "[i]f, at the time of the negligence, the [intervening] act might reasonably have been foreseen, the causal chain is not broken by the intervention of such act." *Torrack,* 144 A.2d at 704. This rationale was accepted by then-Judge (now Justice) Walsh in *Vadala,* 397 A.2d at 1384.

From this review of the Delaware decisions, I conclude, where a defense of superseding cause is raised, a defendant's liability depends on whether the subsequent negligence of the third party should have been reasonably foreseen or reasonably anticipated by the initial tortfeasor. If the subsequent tortious conduct of the third party was reasonably foreseeable, the foreseeable conduct is not a superseding cause and defendant is not relieved of liability.

The Court recognizes that *Restatement (Second) of Torts,* §§ 431, 433, 442 and 442A invoke considerations[3] which do not precisely coincide with those used in the Delaware decisions, but which in many instances would probably produce the same result. Treatises on Torts[4] have propounded alternative considerations for determining liability for tortious conduct. In view of the long adherence in this State to the standards described above and in the absence of strongly persuasive reasons for applying different standards, the standards

---

**2.** *Restatement of Torts,* § 447 reads: "The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or (c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

**3.** § 431 defines legal cause as conduct which is a "substantial factor in bringing about the

harm," and § 433 describes considerations in applying § 431. § 440 defines superseding cause and § 442 describes considerations in applying the superseding cause definition including the phrase, "the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence," which is closely akin to foreseeability. § 442A provides that when conduct creates or increases the "foreseeable risk of harm" through the intervention of another force, such intervention is not a superseding cause.

**4.** *See, e.g.,* 4 Harper, James & Gray, *The Law of Torts,* §§ 20.4—20.6; *Prosser and Keaton on The Law of Torts,* § 42, pp. 272–280.

applied by the Delaware cases cited above will be applied here.

In this case, the issue is whether Du-Pont's alleged negligent or intentional conduct in not warning plaintiffs or in not providing safeguards against the dangers of asbestos for plaintiffs was reasonably foreseeable by the marketing conspirator when asbestos products were shipped without warning of the dangers of asbestos. If it should have been foreseen, DuPont's conduct was not a superseding cause and the marketing conspirator, and, hence, the co-conspirators, would not escape liability by virtue of DuPont's conduct.

■ The conclusion reached above is strengthened in a case such as this, where the charge is that the conduct was willful in furtherance of a conspiracy. *Restatement (Second) of Torts*, § 501(2), in discussing the liability of a person whose conduct is in reckless disregard of another's safety, states that the fact that the conduct is reckless rather than negligent may be considered in determining whether "the actor's conduct bears a sufficient relation to another's harm to make the actor liable therefor." This consideration would, in my judgment, apply in determining causality in the context of intervening or superseding cause. Although the rule makes no mention of intentional tort—which would be viewed as a more flagrant breach than recklessness—logic dictates that no less stringent consideration would apply in the case of willful conduct. *See also Restatement (Second) of Torts*, §§ 435A, 435B & 435B comment a (suggesting that responsibility for harmful consequences should be carried further in case of one who does an intentionally wrongful act rather than merely being negligent).

Cases from other jurisdictions have considered this subject in the context of claims growing out of exposure to asbestos and have applied a test which is harmonious with the Delaware decisions:

In *Neal v. Carey Canadian Mines, Ltd.*, E.D.Pa., 548 F.Supp. 357 (1982), *aff'd*, 3d Cir., 760 F.2d 481 (1985) the Court, applying Pennsylvania law which had adopted the reasoning of *Restatement (Second) of Torts*, § 447, held that in the absence of a showing that the conduct of plaintiffs' employer was highly extraordinary within the industry thereby making that conduct unforeseeable to the asbestos supplier, the employer's conduct in failing to provide protection and warning was not a superseding cause relieving the supplier of liability. *Neal*, 548 F.Supp. at 370–72.

*Menna v. Johns-Manville Corp.*, D.N.J., 585 F.Supp. 1178 (1984), *aff'd*, 3d Cir., 772 F.2d 895 (1985) held that the defense of superseding cause is permissible under New Jersey law. The court observed that the initial tortfeasor is not relieved of liability by intervening acts "if those acts were reasonably foreseeable." *Menna*, 585 F.Supp. at 1186 (citing *Menth v. Breeze*, N.J.Supr., 73 A.2d 183, 189 (1950)).

### III

■ I turn to the relevancy of DuPont's knowledge of the dangers of exposure to asbestos to the issue of superseding cause. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, *Delaware Uniform Rules of Evidence*.

The action by the marketing conspirator in selling asbestos without proper warning, of course, preceded DuPont's conduct. Whether conduct of a party constitutes a proximate cause of injury must be affirmatively proved by evidence and inferences fairly and reasonably deduced therefrom. *Chudnofsky*, 208 A.2d at 518. Conversely, a mere showing that a party was negligent or that that party's negligence was a proximate cause of the injury does not prove that another party's conduct was not a proximate cause of injury.

■ Evidence which bears upon whether Nicolet's marketing conspirator's in supplying asbestos without proper warning acted as a reasonable supplier is relevant to the issue of proximate cause of plaintiffs' injuries. This would include evidence as to the knowledge and information generally

known in that industry. Evidence as to the working conditions under which plaintiffs worked when they were exposed to asbestos is relevant. The test is whether the conduct meets the standard of conduct of a reasonably prudent person under the circumstances. It is not measured by the actor's own conception of the nature and quality of the act or omission. *South Atlantic S.S. Co. of Delaware v. Munkacsy,* Del.Supr., 187 A. 600, 605 (1936).

▮ I do not find that evidence of DuPont's undisclosed knowledge and information concerning the danger surrounding exposure to asbestos would assist the jury in determining whether Nicolet's marketing conspirator's tortious conduct was a proximate cause of plaintiffs' injuries. Hence, that evidence is not admissible for the purpose of showing lack of proximate cause as to Nicolet or its marketing conspirator.

The second consideration is whether evidence of DuPont's undisclosed knowledge and information concerning asbestos danger would assist the jury in applying the applicable superseding cause standard.

▮ Evidence which would assist the jury in determining whether it was or was not foreseeable to a reasonable supplier of asbestos products that a user of the product would fail to give proper warning to persons working in the environment where asbestos would be placed or would fail to provide proper safeguards for those working in such environment is relevant. I do not find that evidence of DuPont's undisclosed knowledge and information on the subject of asbestos danger would assist the jury in determining the foreseeability or lack of foreseeability to the marketing conspirator that a user of asbestos would not warn or provide proper safeguards against asbestos. Hence, that evidence is not admissible for the purpose of showing that DuPont's conduct was a superseding cause.

### IV

Based upon the foregoing considerations, I find no basis for admitting evidence of DuPont's knowledge of the dangers of exposure to asbestos as support for Nicolet's defense that its conduct was not a proximate cause of plaintiffs' injuries or that DuPont's conduct was a superseding cause of plaintiffs' injuries. This decision has not considered the admissibility of the proffered evidence for any purpose other than that discussed above.